## Murray v. Commonwealth.

(Decided May 18, 1928.)

### Appeal from Greenup Circuit Court.

1   Conspiracy.—In prosecution, under Ky. Stats. sec. 1241a-1, for conspiring to intimidate and injure another, evidence that defendant and others met on dark night on little traveled road, and stopped 150 yards from home of prosecuting witness, who was called ·out and injured, together with evidence indicating that persons with defendant understood his purpose, held sufficient to authorize submission to jury of issue of conspiracy and to uphold verdict finding existence of conspiracy to commit offense charged.

2.   Criminal Law.—Where court instructed that defendant could not be convicted of conspiring to injure another, unless jury believed beyond reasonable doubt that conspiracy was entered into by defendant and others, failure to give jury separate converse instruction thereon was not error, where court further instructed that defendant should be acquitted, unless they found defendant was guilty beyond reasonable doubt, defense that there was no conspiracy to do things charged having been clearly presented.

J. D. ATKINSON for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellant and defendant below, Everett Martin Murray, with four others (Coley Fletcher, Noah Messer, George Hall, and Toney Murray), were jointly indicted in Greenup county, in which they were accused of violating the provisions of section 1241a-1 of our present Statutes by conspiring and banding themselves together for the purpose of intimidating, alarming, disturbing, and injuring Elber Lewis, and that, in pursuance thereof, they went near the home of the latter in the nighttime, and enticed him away from his residence, and engaged in a difficulty with him, wherein appellant shot him with a pistol, but from the effects of which he did not die. On his separate trial, appellant was convicted and punished by confinement in the penitentiary for a period of two years. His motion for a new trial was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal, urging through his counsel as grounds for reversal, (1) that the verdict was not sustained by the evidence, and (2) error of the court in refusing to instruct the jury on the whole law of the case.

1. The disposition of ground (1) requires a statement of the substance of the testimony produced at the trial. The alleged conspirators and their alleged victim lived but a short distance apart in the same neighborhood. A few days preceding the Sunday night when the offense was committed, appellant lost 21 gallons of moonshine whisky, but whether he manufactured it or otherwise procured it does not appear in the record. He at once concluded that Elber Lewis was the thief who stole his whisky. Late one Sunday afternoon, appellant, with one George Hall, who had been living at the home of Mrs. Murray, the mother of appellant, went on an automobile drive in the neighborhood with no particular object in view, according to appellant's testimony. In going up Straight creek after dark, and over a very rough road, he met his codefendants in another automobile, and they stopped and engaged in conversation, but what it was about is clouded in mystery, except that soon after it began appellant suggested that he knew where the crowd could obtain some liquor, which appears to have been a pleasing suggestion to appellant's codefendants, and the entire crowd immediately started in the direction of Lewis' home, with appellant leading the van with his

automobile. His brother and codefendant, Toney Murray, a young man about 17 years of age, was in the rear automobile, and, when they reached a spot in the road about 150 or 200 yards from Lewis' home and after it was full dark, appellant told his younger brother to go up and tell Mr. Lewis "to come down, he wanted to talk to him," and, when appellant was asked what he wanted with Lewis, he answered: "I wanted the liquor he got off me, either the liquor or the money one, that was what I wanted."

Young Murray found Lewis eating his supper when the message was delivered, and he did not finish eating until after about 20 minutes when the two went to where the other defendants were in the road, and, upon arriving, Lewis said: "Hello, boys, how are you fellows?" Whereupon appellant, according to his own testimony, asked him if he had any liquor, to which Lewis gave a negative reply, and said that what little he had he had consumed it, and then appellant said: "You did not drink up that 21 gallons you stole off me," and then Lewis, with an oath denied the theft, and appellant replied that "there was no use to lie about it," that he (Lewis) did steal the whisky, and then demanded of him payment therefor, which appellant valued at $200, whereupon Lewis applied to appellant an epithet, and the latter then said: "You robbed me, and you are not going to run over me." According to appellant, Lewis then grabbed him and shoved him back, and at the same time drew a pistol, and "about that time he raised his gun up, and I shot to scare him; when I shot I wan't aiming to kill him." He was asked: "What were your intentions?" and answered: "I allowed to get what he stole off me, but I didn't say anything about it to any of the other fellows."

The other defendants in the indictment, except George Hall, who did not testify at the trial, corroborated substantially the appellant, and with him also stated that, if anyone fired a shot on that occasion other than appellant, they did not see it, although some of them stated that there was more than one shot fired on that occasion, and perhaps as many as three or four, and they all say that Lewis was shot while he was running away. The testimony of Lewis was substantially the same up to the point of the greeting immediately upon his arrival. He stated that immediately following the greeting appellant said: "Is that the God damn man that got my whisky?"

and he answered: "No, you have got this wrong," and that appellant then drew his pistol, whereupon Hall remarked to appellant: "Damn you, you said you would," and that he at the time had a shotgun in his hands, and witness then shoved Hall back, and ran when a number of shots were fired at him, some of which were from a shotgun and the others from a pistol or pistols. Empty shotgun shells were found on the ground the next day at the place where the disturbance occurred the night before, and plaintiff received a flesh wound in his leg made by a bullet from a pistol.

Appellant and his codefendants deny any *agreement* among themselves, or between either one of them and him, to obtain from Lewis the alleged stolen whisky or payment therefor, and because of such denials it is argued that the verdict finding the existence of the conspiracy was and is flagrantly against the evidence. The argument, however, overlooks some of the incriminating facts found in the testimony, which are: (a) The proven remark made by George Hall to appellant, who was with him in his automobile and who resided at the home of his mother, "God damn you, you said you would;" and (b) the admission by Toney Murray, a witness for appellant, that he knew "about the liquor business," evidently meaning the loss of his brother's liquor and the latter's accusation that Lewis had stolen it. The remark in fact (a) attributed to Hall, and to contradict which he was not introduced as a witness by appellant, is strongly indicative, and very persuasive, that the matter had been previously discussed, and that the parties had gone forth for the purpose of executing the determinations arrived at in that discussion. Likewise the remark by Toney Murray in fact (b) also indicated that *he* knew the purpose for which he was sent by his brother to invite Lewis out of his house and to where the defendants were located in the road.

If the jury believed the testimony of Lewis, as *it* had the right to do, the gentleman from nowhere, George Hall, was conveniently along and in appellant's automobile, armed with a shotgun, although they were only engaged in the innocent pastime of "just driving around." It will also be observed that appellant concluded that he would take his pistol along to defend himself against possible attacks and disturbances while pursuing his innocent purpose and peaceful mission on that Sabbath afternoon. Moreover, according to appellant's testimony, he

selected for a pleasure drive about the roughest and most neglected road in that entire community, and upon which he accidentally met his codefendants, and all of which occurred in the nighttime, and after it was practically dark. If the going forth of all of the meeting parties from thence to Lewis' home was for the peaceful purpose of slaking their thirst, one wonders why they did not go to his house instead of stopping in the dark some 150 or 200 yards away and inviting him to come to them, without conveying to him the reason why; for, if we should overlook the suspicious fact of stopping before getting to the house, then the peaceful purpose could not be accomplished, unless Lewis brought to defendants the drinks for which they were hunting, and which he would most probably not do, even if prepared, unless requested or so notified.

In its last analysis, this ground is bottomed upon the theory that neither courts nor juries may look to the circumstances and surroundings, nor may they take into consideration inferences to be drawn from conduct widely different from the usual peaceful course, and because of which it is susceptible to a guilty interpretation. Appellant, we repeat, met with a thirsty crowd. He was laboring under the firm belief that Lewis had robbed him of the remedy with which to satisfy that thirst, and he himself had determined that he would procure the goods, or payment therefor, and nothing could have been more natural than that he would impart the facts as well as his purpose to his codefendants in the indictment, and, as we have seen, that inference is fortified by the fact that Hall was armed, and that he participated in the melee, and reminded appellant at the time of what he had said he would do.

As said in the case of Gambrell v. Commonwealth, 130 Ky. 519, 113 S. W. 478, and which was quoted with approval in the case of Welch v. Commonwealth, 189 Ky. 579, 225 S. W. 470, that:

"A conspiracy is almost necessarily established by the welding into one claim of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it."

The circumstances to which we have referred, and constituting the links in this case, together with the

proven knowledge by Toney Murray, one of the defendants, and the remark of George Hall, another defendant, not only authorized the submission to the jury of the issue as to the conspiracy and confederation necessary to a conviction under the indictment, but also are sufficient to uphold the verdict finding the existence of the conspiracy and confederation, and this ground must be denied.

2. It is argued in support of ground (2) that it was the duty of the court to give to the jury a separate converse instruction to No. 1, the latter of which was given by the court. In that instruction the jury were told that it could not convict defendant, unless it believed beyond a reasonable doubt that the conspiracy and confederation were entered into by appellant and some one or more of his other codefendants, while the reasonable doubt instruction told the jury that it should acquit appellant, unless they found from the evidence beyond a reasonable doubt that he was guilty under instruction No. 1. This left no room for any other instruction, and clearly presented to the jury the only defense relied on: i. e., that there was no confederation or agreement to do any of the things charged in the indictment. This ground, therefore, must also be denied.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.