

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00065-CV

IN THE MATTER OF THE MARRIAGE OF JOVITA ALEXANDRA LUNA
AND JOSE PABLO VICENTE LUNA
AND IN THE INTEREST OF D.L., A DISABLED CHILD

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2014-512,471, Honorable Cecil G. Puryear, Presiding

November 18, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Jose Pablo Vicente Luna (Pablo) appeals from a final decree of divorce rendered in open court on October 21, 2015, memorialized in a written decree signed on December 23, 2015, and filed for record on December 31, 2015. This decree of divorce granted a divorce between Pablo and Jovita Alexandra Luna (Jovita) and divided the property of the parties and provided for the conservatorship and support of an adult disabled child.[1] Pablo's single issue is that the trial court abused its discretion by its

---

[1] No party is appealing any of the terms of conservatorship and support of the adult disabled child.

valuation of the business of Luna Construction and dividing it evenly between Pablo and Jovita. Disagreeing with Pablo, we will affirm the trial court's decree of divorce.

## Factual and Procedural Background

The parties were married on or about February 21, 1980. They separated on or about March 2014. During their marriage, Pablo started Luna Construction and it has remained in business throughout the marriage. The testimony at trial regarding who the owner of Luna Construction was on the date of the trial was contentious. Pablo alternately stated that he had sold half of the business to his son, Eric, in 2001. Later, Pablo testified that Eric was an employee of the company who earned $23.00 an hour. However, during cross-examination, Eric admitted that the name on the assumed name certificate had not been changed until September 2015. Yet, the testimony reveals that Pablo still has check-writing authority on the business account and responsibility for paying the payroll taxes.

During the trial, Pablo testified that there had been no federal income taxes paid for Luna Construction over the previous fourteen years. There were no profit and loss statements for Luna Construction entered into the record. The sum total of the evidence regarding the business came from the introduction of banking records for Luna Construction for the years 2013, 2014, and part of 2015.

Jovita testified that during the marriage she was a stay-at-home mom whose job was to raise the children. Since the children reached their majority, Jovita's primary concern has been tending to the daily needs of the adult disabled child. She has held a few minimum-wage jobs and, at the time of trial, was trying to earn money cleaning

homes and doing ironing. She provided the trial court with an income and expense form that showed her income at $500 per month.

During the marriage, the parties acquired title to six parcels of real estate. The record includes a valuation for each parcel from the Lubbock County Appraisal District. Each parcel shows a date of acquisition that was during the marriage, and there was no claim that any parcel was the separate property of either party.

At the conclusion of the bench trial, the trial court decreed the parties divorced and made appropriate orders for the conservatorship and support of the adult disabled child. Additionally, the trial court awarded five of the real estate parcels to Pablo and awarded one parcel to Jovita. The uncontested value of the five parcels awarded to Pablo was $95,155. The uncontested value of the parcel awarded to Jovita was $43,243. The trial court, based upon the bank records introduced, valued Luna Construction at $100,000 and awarded the company to Pablo, subject to an award of $50,000 as Jovita's portion of Luna Construction, payable in monthly installments of $1,000 per month commencing January 1, 2016, and the first day of each month thereafter until paid.

Following the entry of the final decree of divorce, Pablo filed a motion for new trial. No hearing was held on the motion for new trial and the same was overruled by operation of law. Pablo did not request that the trial court file any findings of fact or conclusions of law. Notice of appeal was given, and we are presented with a single issue contending that the trial court's disproportionate division of the property was not supported on any reasonable basis. We disagree and will affirm

3

Standard of Review and Applicable Law

A trial court is charged with ordering a division of the community property estate "in a manner that the court deems just and right, having due regard for the rights of each party." *See* TEX. FAM. CODE ANN. § 7.001 (West 2006);[2] *Hrncirik v. Hrncirik,* No. 07-15-00001-CV, 2016 Tex. App. LEXIS 9661, at *6 (Tex. App.—Amarillo Aug. 30, 2016, no pet.) (mem. op). The application of this statutory standard means that the trial court does not have to divide the community estate equally, so long as the division is equitable. *See O'Carolan v. Hopper,* 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (op. on reh'g.). Because the trial court has wide discretion in dividing the community estate, we review a trial court's decision under an abuse of discretion standard. *See Hrncirik,* 2016 Tex. App. LEXIS 9661, at *6. A trial court abuses its discretion when it acts without reference to guiding principles or acts arbitrarily or unreasonably. *See Gardner v. Gardner,* 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.).

Because Pablo contends that there was no evidence supporting the trial court's valuation of Luna Construction at $100,000, we must necessarily review the trial court's exercise of discretion under the legal sufficiency standard. *See Graves v. Tomlinson,* 329 S.W.3d 128, 153 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The question of the legal sufficiency of the evidence is not an independent ground of appeal; rather, it is a relevant factor in assessing whether the trial court abused its discretion. *See id.* A legal sufficiency complaint will be sustained only if (1) there is a complete

_____

[2] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *See id.* at 141 (citing *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex. 2003) (per curiam)). Each spouse has the burden to present evidence of the value of the community property. *See Wallace v. Wallace,* 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd w.o.j.). Finally, when a party fails to present any valuation testimony regarding an asset of the community that is to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property. *See Aduli v. Aduli,* 368 S.W.3d 805, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

When, as in this case, no findings of fact or conclusions of law were requested or filed, we presume the trial court made the findings necessary to support its judgment. *See In re Marriage of Boyd,* No. 07-14-00211-CV, 2015 Tex. App. LEXIS 6452, at *6 (Tex. App.—Amarillo June 24, 2015, no pet.) (mem. op.). The trial court's judgment will be affirmed if it can be upheld on any legal theory supported by the evidence. *See id.* at *6–7.

Analysis

The record reveals that, after thirty-four years of marriage, Jovita filed for divorce in March of 2014. A final hearing was held on the matter on October 21, 2015. At the trial before the bench, Jovita presented documentary evidence in the form of bank statements from Luna Construction for the period between January 31, 2013, and

August 31, 2015. There were gaps in the bank statements, most notably for the year 2014, when there were no statements between January 1 and August 29 of 2014. These statements presented a view of the deposits and checks written on the Luna Construction account. It is noteworthy that between January 1, 2013, and December 31, 2013, the monthly deposits ranged from a one-month low of $19,000 to a high of $58,000. The average for the year was approximately $32,000. As stated, these bank statements also provided the trial court with the disbursements for building materials and wages from this account.

Beginning in 2014, the deposits saw a significant decrease. There were only partial records provided until August 2014. Beginning in August 2014, the deposits ranged from a high $23,000 to a low of $4,000. It is noteworthy that the original petition for divorce filed by Jovita alleges that the parties separated in March 2014.

Additionally, from the record we learn that, although Pablo contended that his son Eric owned a portion, if not all, of the business, the assumed name certificate on file in Lubbock County still listed Luna Construction as a d/b/a of Pablo until September of 2015. Further, the bank records reflect that Eric was receiving weekly paychecks, as were the other hourly employees. Pablo testified that Eric earned $23.00 an hour. It was up to the trial court, as the factfinder, to judge the credibility of the witness's testimony and the weight to be given to that testimony. *See Iliff v. Iliff,* 339 S.W.3d 74, 83 (Tex. 2011).

In making a division of the property, the trial court was entitled to take into consideration the disparity of earning capacity of the parties. *See Murff v. Murff,* 615

6

S.W.2d 696, 698 (Tex. 1981). In this regard, the record reflects that Jovita was always a stay-at-home mom who had no job-related skills. That she was able to obtain minimum wage positions does not detract from this fact.

Based upon this record, the trial court had sufficient information to determine a value of the business. *See Graves,* 329 S.W.3d at 153. The evidence received by the trial court was valid evidence of value and amounted to more than a scintilla of evidence. *See id.* Moreover, without any findings of fact or conclusions of law, we must presume that the trial court made findings that support its judgment. *See In re Marriage of Boyd,* 2015 Tex. App. LEXIS 6452, at *6. Pablo provided the trial court with no evidence that supports his current contention that the business was improperly valued. Because of this, he cannot be heard to complain about the quantum of the evidence the trial court had before it. *See Aduli,* 368 S.W.3d at 820. As such, the trial court did not abuse its discretion in valuing the business at $100,000 and awarding one-half of the value to Jovita. *See Hrncirik,* 2016 Tex. App. LEXIS 9661, at *6.

Even were we to find that the trial court's valuation of the business was in error, this would not lead us to reverse the trial court's final decree of divorce. This is so because, when the real estate division of the property is factored in, Pablo received more of the community estate than Jovita. The record reflects that Pablo received real estate with an uncontested value of $95,155. Jovita received a single property with an uncontested value of $43,243. Thus, at the end of the trial, Pablo received total community property of $145,155. Jovita's portion of the community property awarded her had a value of $93,243. Pablo received almost 61% of the marital assets. There is nothing in this record to support the proposition that the trial court would have made any

7

different division of the community property had it valued the business at a lower amount.  *See Butler v. Butler,* 975 S.W.2d 765, 770 (Tex. App.—Corpus Christi 1998, no pet.).  From the totality of this record, it is demonstrated that the trial court made a division of the marital estate that was just and right.  *See* § 7.001; *Hrncirik,* 2016 Tex. App. LEXIS 9661, at *6.  Accordingly, Pablo's issue to the contrary is overruled.

## Conclusion

Having concluded that the trial court did not abuse its discretion, we affirm the final decree as entered.

Mackey K. Hancock
Justice

8