# IN THE SUPREME COURT OF TEXAS

No. 15-0882

IN RE DEAN DAVENPORT, ET AL., RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**Argued March 23, 2017**

JUSTICE WILLETT delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a concurring opinion, in which JUSTICE LEHRMANN joined.

This dispute arises from a contingency fee agreement for legal services. The trial court granted a new trial, in part, because the pertinent agreement "unambiguously" permitted the lawyers to recover an ownership interest as attorney fees. However, we conclude that the trial court's finding was an abuse of discretion because the agreement unambiguously states that the lawyers were only entitled to attorney fees from a monetary recovery. Accordingly, we conditionally grant Davenport's petition for writ of mandamus, directing the trial court to vacate its new trial orders from September 2, 2014, and March 25, 2015, and to render a final judgment consistent with this opinion.

## I. Background

### A. Factual and Procedural Framework

In 1999, Dean Davenport, James Allen, and Mark Wynne formed Water Exploration Co., Lt. ("WECO") as a limited partnership to find, drill for, and produce commercial drinking water, with each partner having an equal interest in the company. A few years later, Davenport's partners claimed Davenport had forfeited his interest. Davenport and Dillon Water Resources ("Dillon"), a company owned by Davenport, hired Haynes and Boone, LLP, to sue Allen, Wynne, and their partnerships for a declaratory judgment that Davenport still had a 33% interest in WECO. The trial court granted partial summary judgment that Dillon "is now and always has been a partner in good standing in WECO."

Two years later, Davenport hired new counsel, Tom Hall and Blake Dietzmann, because he felt no advancements were being made in other pieces of the lawsuit. The lawyers claimed they could win Davenport "a big monetary verdict." Davenport terminated his relationship with Haynes and Boone and hired Hall and Dietzmann. Davenport signed a contingency fee agreement (the "Agreement"). The Agreement states, "It is the purpose of this Agreement to successfully pursue Client's claim arising out of business dealings with WECO." It goes on to provide:

> In consideration for the present agreement of [the Attorneys] to represent [the] Client and the promise to render legal services in the future in pursuit of this claim, [the] Client agrees to sell, transfer, assign and convey to [the Attorneys] an undivided interest in the above claim to be calculated as follows:
>
> **Forty percent (40%) of the gross amount recovered**
> **Except that Attorneys will not take a fee out of the ownership of 5 D Water Resources and Dillon Water Services**
> . . . .
> **By "GROSS AMOUNT" is meant the total sums recovered.**

2

The Agreement also states that the lawyers would pay "all reasonably necessary expenses incurred in the prosecution of the case" and that such "sums shall be repaid by Client out of any monies recovered."

Hall and Dietzmann won a $70 million jury verdict for Davenport for conversion of his partnership interest in WECO. However, because the lawyers harbored serious doubts about the strength of the verdict on appeal, they advised Davenport to settle. Davenport successfully settled his claim with Allen. Davenport and Dillon received $200,000 and promptly paid the lawyers the appropriate share in contingency fees. Allen also transferred his 33% interest in WECO to Davenport. Hall negotiated and drafted the settlement agreement. The lawyers claim that they exchanged documents with Davenport to transfer part of his new 66% ownership interest to them, but this transfer never occurred.

Then Wynne, the other WECO partner, appealed the judgment. In an effort to pressure Wynne to settle, Davenport's legal team filed an involuntary bankruptcy petition against Premier General Holdings, Wynne's limited partnership. Hall and Dietzmann litigated and successfully obtained an order from the trial court for a receiver to distribute WECO funds held in the court's registry to Dillon. Dillon paid the lawyers an additional $297,813.30 in attorney fees as their contingent share for these monies, which constituted "sums recovered" in a "claim arising out of business dealings with WECO." Eventually, Davenport and Wynne settled. Davenport bought out Wynne's interest with his own money, now owning 100% of WECO. Once again, Hall and Dietzmann drafted and signed the settlement agreement. The lawyers filed suit against Davenport requesting unpaid attorney fees, alleging they were entitled to an ownership interest in WECO and that Davenport failed to pay expenses of $226,795.01 in the underlying suit.

3

At trial, the lawyers sought a judgment that would include an ownership interest in WECO as compensation for unpaid attorney fees. The trial court determined that the Agreement was ambiguous and submitted the issue to the jury. The jury found that the lawyers were not entitled to an ownership interest in WECO because Davenport had not agreed in the Agreement that attorney fees could include an ownership interest in WECO.[1] The jury also found that the attorneys had waived any rights they had to an ownership interest and were estopped from seeking any such interest. But the jury did find for the attorneys on their claim for $226,795.01 in unpaid expenses under the Agreement. The lawyers moved for judgment despite the jury's verdict, which was denied. On May 20, 2014, the trial court signed a final judgment for the unpaid expenses plus $1.3 million for attorney fees incurred in the litigation. The lawyers then moved for a new trial, arguing that the jury's conclusion that the contract was unambiguous must be disregarded as a legal finding and sufficient evidence did not support estoppel and waiver. The trial court signed an order granting the motion for a new trial.

Later the court of appeals conditionally granted mandamus relief and directed the trial court to state its reasons for the new trial, to comply with *In re Toyota Motor Sales, U.S.A., Incorporated*.[2] The trial court replaced its original order, stating that the Agreement was unambiguous after all and that the evidence was legally and factually insufficient to support the jury's findings of estoppel and waiver. The court of appeals summarily denied Davenport's second petition for writ of mandamus.

---

[1] The jury likewise found the attorneys were not entitled under the agreement to an interest in WAD, Inc., WECO's general partner.

[2] 407 S.W.3d 746, 758 (Tex. 2013).

## B. Summary of Issues and Our Disposition

Davenport complains that the trial court improperly nullified a jury verdict in this case, substituting its judgment for that of a jury. Specifically, he argues that the trial court abused its discretion in ordering a new trial based on its finding that the Agreement "unambiguously" provides for the recovery of an ownership interest as attorney fees. We agree. Therefore, we need not reach Davenport's second issue, which claims the trial court abused its discretion in granting a new trial based on legally and factually insufficient evidence to support the jury's estoppel and waiver findings. These were Davenport's affirmative defenses and are no longer relevant because we have already found in his favor. Accordingly, we order the trial court to vacate both of its new trial orders and render a final judgment consistent with this opinion.

## II. Analysis

A trial court has discretion to grant a new trial for "good cause," however this discretion has limits.[3] An appellate court may by mandamus direct a trial court to vacate a new trial order in one of three ways: (1) when a merits-based review of the record establishes that the trial court abused its discretion, (2) when the trial court's order was void, or (3) when the trial court erroneously finds that the jury's answers to special issues are irreparably conflicting.[4] Because nothing suggests the trial court's order was void, nor that any irreconcilable conflict exists, we only address whether the trial court abused its discretion in granting a new trial. We hold that the

---

[3] TEX. R. CIV. P. 320; *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009).

[4] *In re Toyota*, 407 S.W.3d at 758–59.

5

trial court abused its discretion in granting a new trial based on its findings that the Agreement "unambiguously" provided for the recovery for an ownership interest as attorney fees.

The trial court's first explanation for granting a new trial was its post-judgment finding that the Agreement "unambiguously provides that attorneys' fees would be paid out [of] the ownership interest in any business recovered except 5 D Water Resources and Dillon." We summarize our recent, evolving jurisprudence on review of new trial orders: "A new trial order must be understandable, reasonably specific, . . . cogent, legally appropriate, specific enough to indicate that the trial court did not simply parrot a pro forma template, and issued only after careful thought and for valid reasons."[5] In today's case, while the trial court's rationale may be "reasonably specific," we do not believe it was issued "for valid reasons."

The lawyers, Hall and Dietzmann, argue that they are entitled to a share of the ownership interest in WECO as payment for their services. Davenport, however, claims the lawyers do not have any rights to his ownership interest because the Agreement does not authorize the lawyers to any non-cash benefits. After examining the Agreement's language, we find no support for the lawyers' assertion. The contract unambiguously allows for Hall and Dietzmann to only recover money in exchange for their legal services.

The dispute turns on questions of contract interpretation. Whether a contract is ambiguous is a matter of law for the court.[6] A contract is considered ambiguous when its meaning is uncertain

---

[5] *Id*. at 757 (internal quotations omitted) (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688 (Tex. 2012) and *Columbia*, 290 S.W.3d at 213).

[6] *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980).

and doubtful or it is reasonably susceptible to more than one interpretation.[7] When construing a contract, the terms are typically given "their plain, ordinary, and generally accepted meaning."[8] Courts may look to dictionaries to discern the meaning of a commonly used term that the contract does not define.[9] An unambiguous document will be enforced as written.[10]

Here, the plain language of the Agreement unambiguously supports Davenport's position. The term "sums" in the contract is the crux of the dispute. The Agreement states that the lawyers will receive "[f]orty percent (40%) of the gross amount recovered" and then later states "[b]y 'GROSS AMOUNT' is meant the total sums recovered." Black's Law Dictionary defines "sum" as "[a] quantity of money."[11] No textual support in the contract indicates "sums" includes an "ownership interest."

The lawyers contend the "except clause" in the Agreement indicates they are entitled to an ownership interest in WECO. The except clause states that the lawyers receive 40% of the gross amount recovered, "[e]xcept that Attorneys will not take a fee out of the ownership of 5 D Water Resources and Dillon Water Services." They essentially argue that, by force of negative implication, a contingent fee clearly would be paid out of the recovery of an ownership interest in a business other than 5D or Dillon. They further argue that if the except clause was not read this way, it would be superfluous. We agree that the except clause alone does not prohibit a non-

---

[7] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[8] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[9] *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011).

[10] *Heritage Res.*, 939 S.W.2d at 121.

[11] *Sum*, BLACK'S LAW DICTIONARY (9th ed. 2009); *see also sum*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) (defining "sum" as "an indefinite or specified amount of money").

monetary recovery for the lawyers, but no basis exists to construe the except clause, which explicitly prohibits the lawyers from taking a fee out of two specified companies, to unambiguously mean the lawyers *are* entitled to take a fee out of other ownership interests as a matter of law.

The Court must read contractual provisions so none of the terms of the agreement are rendered meaningless or superfluous.[12] But the lawyers request that we infer a positive from a clear negative. While this may be permissible in some cases, it is not possible to infer a positive from this specific negative. The parties agree the except clause was written in the Agreement to make clear that Hall and Dietzmann would not receive any part of Davenport's original 33% interest in WECO, which was confirmed on summary judgment while Haynes and Boone was representing Davenport. The except clause therefore denies the lawyers a fee based on a recovery they did not obtain. It is not indicative of whether a non-monetary recovery is permissible based on the other provisions of the contract. Additionally, it is not surplusage because the exception clarified an issue unrelated to this dispute.

Courts may not rewrite the parties' contract, nor should courts add to its language.[13] We cannot make new contracts between the parties and must enforce the contract as written.[14] When

---

[12] *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014); *Gilbert Tex. Constr., L.P., v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

[13] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

[14] *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

the terms are plain, definite, and unambiguous, as they are here, the court cannot vary these terms.[15] Accordingly, we find the Agreement unambiguously favors Davenport.

Our conclusion is further supported by the special rules this Court has articulated for attorney-client fee agreements. As we stated in *Anglo-Dutch Petroleum International, Inc. v. Greenberg Peden, P.C.*,[16] "[b]ecause a lawyer's fiduciary duty to a client covers contract negotiations between them, such contracts are closely scrutinized."[17] A lawyer has a duty to "appreciate the importance of words" and "detect and repair omissions in client-lawyer contracts."[18] The goal of an attorney-client fee agreement is to ensure that the client is informed of the terms.[19] This does not mean every dispute over the contract's meaning must be resolved against the lawyer, but whether the lawyer was reasonably clear is determined from the client's perspective.[20] Placing the burden on the lawyers to be "clear" in fee agreements is warranted, given a lawyer's sophistication, the trusting relationship between a lawyer and his client, and a lawyer's responsibility to notify the client of the fee's basis or rate at the outset.[21] Specifically to a contingent-fee agreement applied to interests other than money, we have held that the "burden" is

---

[15] *Id.*

[16] 352 S.W.3d 445 (Tex. 2011).

[17] *Id.* at 450.

[18] *Id.* at 453 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. h (2000)).

[19] *Id.* at 451.

[20] *Id.*

[21] *Id.* at 450, 453; *Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 95–96 (Tex. 2001).

on the lawyer "to express in a contract with the client whether the contingent fee will be calculated on non-cash benefits as well as money damages."[22]

Applying these principles here, the trial court had no justification to conclude the Agreement unambiguously entitled the lawyers to an ownership interest in WECO. The Agreement fails to state the fee will be calculated by including non-cash benefits and money damages. Instead, it provides that the fee will be calculated based on "the gross amount recovered," which as stated above, is defined as "the total sums recovered." It would have been simple for the lawyers to include language in the Agreement that would have explicitly allowed for the lawyers to receive a percentage of partnership or other non-cash interests derived from their representation. Because they neglected to do so, and for the reasons set forth above, we find that the Agreement only permits recovery from monetary awards. This is further supported by the fact that the Agreement does not state how recovery from a non-cash award would be calculated.[23] Therefore, the trial court abused its discretion in holding that the Agreement entitles the lawyers to recovery from non-cash benefits, such as the ownership interest in any business recovered.

### III. Conclusion

The trial court abused its discretion by granting a new trial based on its findings that the Agreement "unambiguously" provided for the recovery of an ownership interest as attorney fees. Because the Agreement is unambiguous in favor of Davenport on this question, we do not address

---

[22] *Levine*, 40 S.W.3d at 95.

[23] The lawyers' proportional interest from the ownership interest in WECO cannot be calculated as a matter of law. Davenport obtained the remaining 67% of WECO through a settlement after a verdict awarded him a 33% interest and damages. This further acquisition was largely due to Davenport's willingness to take on the risk of a troubled business. He even purchased the last 33% with $3.3 million of his own money. It is unclear how much the lawyers would take as a fee based on a business interest that Davenport purchased on his own.

10

Davenport's affirmative defenses of waiver and estoppel. Accordingly, we conditionally GRANT Davenport's petition for writ of mandamus, and direct the trial court to VACATE both of its new trial orders, and to RENDER a final judgment consistent with this opinion. We are confident the trial court will comply, and the writ will issue only if it does not.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 16, 2017

11