

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00313-CV

---

180 TALMADGE, INC., APPELLANT

V.

MICHAEL LAM, APPELLEE

---

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-2021F-042, Honorable Roland D. Saul, Presiding

---

August 20, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, 180 Talmadge Inc. (Talmadge), appeals from a judgment favoring Michael Lam for breach of contract. After a bench trial, the trial court found Talmadge breached a purchase and sale agreement for sale of real estate and awarded Lam $75,000 in damages, plus interest and attorney's fees. Talmadge challenges the breach finding and the fee award. We affirm.

## Background[1]

On April 13, 2021 (the Effective Date), Talmadge and Lam entered into an agreement for the sale of real property containing a restaurant property for $874,000. The agreement included several key provisions:

- Lam was required to pay $874,000 at closing, set for 45 days after the Effective Date.

- Lam initially deposited $25,000 in earnest money.

- The agreement established parallel 21-day periods from the Effective Date to perform due diligence and obtaining financing.

- If Lam canceled the contract before the 21-day period expired, his initial $25,000 would be returned. If Lam failed to cancel the contract after 21 days, he was required to make a second earnest money payment of $50,000. The $75,000 total deposited would then "pass" to Talmadge and be credited against the purchase price at closing.

- During the 21-day financing period, Lam was obligated to use his "best efforts" to obtain financing for 60% of the purchase price, secured by a deed of trust. Section 32 stated that if Lam failed to terminate the agreement during the financing period solely due to inability to obtain financing, the earnest money would pass to Talmadge.

- Independent of the due diligence and financing periods, Section 6 gave Lam "the right to enter upon the Property between the Effective Date and the Closing Date," subject to certain conditions including indemnification, confidentiality, and insurance requirements.

- Section 17, titled "Default," specified that if Talmadge breached the agreement, Lam could terminate the contract and reclaim his $75,000 earnest money deposit.

Lam did not cancel within the 21-day period and made the additional $50,000 earnest money payment. Forty-two days after the Effective Date, and three days before

---

[1] Neither party challenges the trial court's findings of fact. As such its findings of fact have been incorporated into our statement of the background of this appeal.

closing, Lam's lender required a Phase II Environmental Assessment[2] as a condition for financing. Lam immediately requested entry to the property to perform this assessment. Talmadge denied the request.

The following day, Lam's attorney sent Talmadge a letter terminating the agreement, citing in part the denial of entry to conduct the assessment as a breach of contract. Lam demanded the immediate return of his $75,000 in earnest money.

Lam sued Talmadge, contending that denying access for the assessment violated his right to enter the property under Section 6 of the agreement. The trial court, after hearing the evidence, agreed with Lam. It ordered Talmadge to return the $75,000 earnest money and to pay $28,432.46 for Lam's attorney's fees.

**Analysis**

Talmadge raises two issues on appeal. First, it challenges the trial court's finding that Talmadge breached the agreement by denying Lam entry to conduct a Phase II Assessment after the due diligence period ended. Second, it contests the award of attorney's fees to Lam while denying fees to its own attorneys. These issues largely turn on principles of contract interpretation.

1. <u>Breach of Contract</u>

Contract interpretation follows well-established rules. We review unambiguous contracts de novo as a question of law. *Samson Expl., LLC v. Bordages*, 2024 Tex.

---

[2] At trial, Talmadge's representative described the assessment as an invasive procedure. It would involve taking soil samples to check for toxic contamination, potentially damaging the building if done inside. Lam acknowledged that this type of assessment qualifies as a feasibility study.

LEXIS 439, at *4 (Tex. 2024). Our primary goal is to determine the parties' intent as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy*, Inc., 207 S.W.3d 342, 345 (Tex. 2006). We examine and consider the entire document to harmonize all provisions, giving effect to each. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). Importantly, we are guided by the principle that "[c]ourts may not rewrite the parties' contract, nor should courts add to its language." *In re Davenport*, 522 S.W.3d 452,457 (Tex. 2017).

Talmadge contends that Section 8's 21-day provision restricts Lam's right to enter the property for bank-requested feasibility studies after this period. Talmadge argues that this specific provision should control over the general right of access granted in Section 6. While we recognize the principle that specific provisions typically control over general ones, we disagree with Talmadge's interpretation in this case.

Section 8 states Lam "shall have" a 21-day period "to perform a feasibility study on the Property."[3] However, this provision does not expressly state that it is the only time Lam may conduct such studies. Instead, it appears to set a deadline for an initial feasibility study, after which Lam would decide whether to proceed with the purchase or terminate the agreement. Section 6, on the other hand, grants Lam "the right to enter upon the Property between the Effective Date and the Closing Date" subject to certain

---

[3] Trial evidence showed that Lam completed a Phase I Assessment during the 21-day financing period. Talmadge's representative described a Phase I Assessment as "an investigation into who the tenants were on the property and owners/tenants on property surrounding to investigate whether there's a hazardous material or contamination on the property."

conditions. This broader right of access is not limited to the 21-day period and does not prohibit additional studies or assessments.

Reading these provisions together, we interpret Section 8 as establishing an initial due diligence period, while Section 6 allows for ongoing access and potential additional studies throughout the contract period. This interpretation gives effect to both provisions without rendering either meaningless. It also aligns with the practical realities of real estate transactions, where new information or lender requirements may necessitate additional inspections or studies closer to the closing date. Consistent with our obligation to give meaning to all contractual terms and harmonize them when necessary, we therefore conclude that Section 6's general right of access does not conflict with, but rather complements, the specific 21-day period in Section 8. Talmadge's refusal to allow the Phase II Assessment, which was requested within the period between the Effective Date and Closing Date, constituted a breach of the agreement under Section 6.

In addition to its arguments about Sections 6 and 8, Talmadge asserts that Lam breached Section 32 when his lender requested additional information after the 21-day Financing Period expired. However, the record does not show that Talmadge terminated the agreement based on Lam's alleged failure to meet Section 32's requirements. At trial, Lam testified that his "financing was all lined up and ready to go" when the lender demanded the assessment. He further stated that the financing only fell through after Talmadge denied him property access, which led to his termination of the agreement. Giving weight to the trial court's findings as we should, this testimony suggests Lam had successfully arranged financing within the 21-day period, initially fulfilling his obligation under Section 32. The Phase II Assessment request came after the Financing Period but

before the closing date. Because Section 32 does not preclude the possibility that lender requirements might change or that additional due diligence might be necessary after the initial 21-day period, we do not find that this timing triggered a default under Section 32, which was focused on Lam's efforts to obtain financing during the 21-day period.

At trial, Talmadge's representative expressed concern that discovering ground contamination might cause Lam's financing to fall through, leaving Talmadge with an unsalable property. Lam countered this, testifying that he would still be obligated to close even if environmental issues were found. Importantly, under the agreement, if Lam failed to close due to lost financing, he would have defaulted, allowing Talmadge to keep the $75,000 earnest money. The net effect is that Talmadge's refusal to allow Lam to enter the property preceded any potential breach by Lam that could have occurred if the assessment had caused him to lose financing.

After carefully reviewing the record, we conclude that the trial court correctly determined Talmadge breached the agreement by refusing to allow Lam to conduct the Assessment. This refusal prevented Lam from exercising his contractual right to enter the property. Accordingly, we overrule Talmadge's first issue.[4]

2. Attorney's Fees to the Prevailing Party

The agreement stipulated that if either party sued to enforce its terms, the prevailing party would be entitled to recover attorney's fees. Talmadge's second issue

---

[4] Talmadge also contends that the trial court's legal conclusions lack support from its factual findings. However, because we have determined that the trial court correctly applied the law to the facts, we need not address this argument. *See* TEX. R. APP. P. 47.1.

6

argues that because Lam allegedly failed to prove Talmadge breached the agreement, Talmadge should be considered the prevailing party and thus entitled to its attorney's fees.

However, we have already determined that the trial court correctly found Talmadge breached Section 6 of the agreement by denying Lam entry to conduct the Assessment. Given this determination, we need not address Talmadge's argument regarding attorney's fees. *See* TEX. R. APP. P. 47.1.

## Conclusion

The trial court's judgment is affirmed.

Lawrence M. Doss
Justice