**Opinion issued August 29, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00008-CV**

———————————

**SEALY EMERGENCY ROOM, L.L.C. AND
KANNAPPAN KRISHNASWAMY, M.D., Appellants**

**v.**

**FREE STANDING EMERGENCY ROOM MANAGERS OF
AMERICA, L.L.C., DR. ATUL DHINGRA, DR. SWAPAN DUBEY,
AND DR. SANJEEV DUBEY, Appellees**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2018-48143-A**

---

## MEMORANDUM OPINION

Appellants, Sealy Emergency Room, L.L.C. ("Sealy ER") and Kannappan

Krishnaswamy, M.D., challenge the trial court's rendition of summary judgment in

favor of appellees, Free Standing Emergency Room Managers of America, L.L.C.

("FERMA"), Dr. Atul Dhingra, Dr. Swapan Dubey, and Dr. Sanjeev Dubey (the "third-party doctors") (collectively, "appellees"), on Sealy ER's and Dr. Krishnaswamy's counterclaims and third-party claims for breach of contract, fraud, fraudulent inducement, and negligence.

On the original submission of this appeal, consistent with this Court's precedent, we dismissed Sealy ER's and Dr. Krishnaswamy's appeal for lack of appellate jurisdiction because of the manner in which the trial court had severed the issues on appeal from the main case. *See Sealy Emergency Room LLC v. Free Standing Emergency Room Managers of Am., L.L.C.*, 669 S.W.3d 488, 493–94 (Tex. App.—Houston [1st Dist.] 2022), *rev'd*, 685 S.W.3d 816 (Tex. 2024). Sealy ER and Dr. Krishnaswamy then filed a petition for review with the Texas Supreme Court, asserting that this Court had jurisdiction over their appeal. Holding that the trial court's severance ruling did not determine the severed case's appealability, the Texas Supreme Court reversed and remanded the case for this Court to consider Sealy ER's and Dr. Krishnaswamy's appeal on the merits. *See Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d at 820–24, 826 (Tex. 2024).

In three issues, Sealy ER and Dr. Krishnaswamy contend that the trial court erred in granting summary judgment.

We affirm.

2

## Background

FERMA, a company specializing in the management of free-standing emergency rooms, brought suit against Sealy ER and Dr. Krishnaswamy after a dispute arose from a contractual relationship between FERMA, Sealy ER, and Dr. Krishnaswamy for the management of Sealy ER, an emergency room facility located in Sealy, Texas. In its first amended petition, FERMA brought claims for breach of contract and a declaratory judgment against Sealy ER and Dr. Krishnaswamy.

In their first amended answer and counterclaim, Sealy ER and Dr. Krishnaswamy generally denied the allegations in FERMA's petition and brought counterclaims against FERMA for breach of contract, fraud, fraudulent inducement, and negligence. Sealy ER and Dr. Krishnaswamy alleged that they had entered into a contract with FERMA, titled "The Emergency Department Amended Management Agreement" (the "amended management agreement") in February 2015. As to their breach-of-contract counterclaim, Sealy ER and Dr. Krishnaswamy alleged that FERMA had breached its contractual duties to "educate and orient new physicians to the facility"; update the policies and procedures manual; "provide a billing liaison representative" and "enhance cash flow"; "train and educate . . . staff"; engage in business development and marketing initiatives; adhere to the mandated laboratory compliance program; provide supervisory personnel; "produce copies of its employee[s'] workman compensation/personal/professional insurances"; "keep

3

confidential proprietary information of Sealy ER"; "comply with HIPAA"; and make "changes in . . . policies [and] procedures," including disaster preparation policies. As to their counterclaims for fraud and fraudulent inducement, Sealy ER and Dr. Krishnaswamy alleged that FERMA committed fraud and fraudulently induced them to enter the contract by falsely representing that it was proficient in managing "billing issues"; able to provide various services, including business development, consulting, and risk management services, and the recruitment of "qualified and appropriate" physicians; and capable of complying with state regulatory and licensing requirements. Such representations were made with the intent that Sealy ER and Dr. Krishnaswamy would rely on them, FERMA knew the representations were false, and Sealy ER and Dr. Krishnaswamy relied on the representations. As a result, Sealy ER and Dr. Krishnaswamy suffered damages.

Finally, as to their negligence counterclaim, Sealy ER and Dr. Krishnaswamy alleged that FERMA owed them "a duty to accomplish its tasks consistent with standards in the industry" and by engaging in the aforementioned conduct FERMA breached its duty, proximately causing damages to Sealy ER and Dr Krishnaswamy.

In its amended third-party petition, Sealy ER brought third-party claims for fraud, fraudulent inducement, and negligence against the third-party doctors. As to its third-party claims for fraud and fraudulent inducement, Sealy ER alleged that the same conduct that served as the basis for its counterclaims against FERMA served

4

as the basis for its third-party fraud and fraudulent-inducement claims. As to its third-party negligence claim, Sealy ER alleged that the third-party doctors had a "duty to accomplish [their] tasks with standards in the industry." According to Sealy ER, the third-party doctors "had personal knowledge of the need to have the Sealy ER [l]aboratory in compliance with state laboratory requirements," yet "Texas compliance authorities . . . failed Sealy ER" "on two separate occasions." And although the third-party doctors were "aware of state and federal[] . . . HIPAA requirements," they "failed to obtain proper administrative HIPAA consent to avoid impermissible use or disclosure of clinical information that compromise[d] the security [and] privacy of . . . patients' health information." That breach "placed in jeopardy" Sealy ER's ability to operate. As a result of the third-party doctors' negligence, Sealy ER suffered damages.

Appellees filed a motion for partial summary judgment against Sealy ER and Dr. Krishnaswamy, asserting that they were entitled to judgment as a matter of law on Sealy ER's and Dr. Krishnaswamy's counterclaim against FERMA for breach of contract and Sealy ER's and Dr. Krishnaswamy's counterclaims and third-party claims against appellees for fraud, fraudulent inducement, and negligence. According to appellees, in 2014, FERMA and Sealy ER entered a contract "in which FERMA agreed to manage Sealy ER in exchange for a monthly payment of $40,000." In February 2015, "due to Sealy ER's worsening financial condition, the

5

parties negotiated" the amended management agreement, in which "FERMA agreed to reduce its monthly fee." The parties performed under that contract until 2018. In spring 2018, Dr. Krishnaswamy approached FERMA "and asked if FERMA would mutually agree to terminate" the amended management agreement, but FERMA declined to do so. Then, Dr. Krishnaswamy "wrongfully terminated" the amended management agreement, which led FERMA to file suit against Sealy ER and Dr. Krishnaswamy for breach of contract and a declaratory judgment. Sealy ER and Dr. Krishnaswamy then filed counterclaims and thirty-party claims against appellees.

In their partial-summary-judgment motion, appellees argued that (1) Sealy ER's and Dr. Krishnaswamy's breach-of-contract counterclaim against FERMA failed as a matter of law because Sealy ER and Dr. Krishnaswamy did not identify any existing contractual obligation that was breached; (2) Sealy ER's and Dr. Krishnaswamy's fraud and fraudulent-inducement counterclaims and third-party claims against appellees failed as a matter of law because Sealy ER and Dr. Krishnaswamy did not identify any false representation upon which they relied in entering into the amended management agreement; (3) Sealy ER's and Dr. Krishnaswamy's negligence counterclaim and third-party claim against appellees failed as a matter of law because Sealy ER and Dr. Krishnaswamy "admitted that no harm actually occurred as a result of FERMA's and the [third-party doctors'] alleged

6

negligent actions"; and (4) Sealy ER's and Dr. Krishnaswamy's tort counterclaims and third-party claims were barred by the economic loss doctrine.

In their response to the partial-summary-judgment motion, Sealy ER and Dr. Krishnaswamy argued that appellees were not entitled to judgment as a matter of law on the counterclaims and third-party claims because genuine issues of material fact existed. According to Sealy ER and Dr. Krishnaswamy, their fraud and fraudulent-inducement counterclaims and third-party claims were not barred by the economic loss doctrine and Sealy ER's and Dr. Krishnaswamy's counterclaims and third-party claims were based on "fraud outside of [the] contract." Further, Sealy ER and Dr. Krishnaswamy asserted that the damages they sought in their counterclaims and third-party claims for negligence, fraud, and fraudulent inducement against appellees were not limited to contractual expectancy damages. And FERMA breached the contract. Sealy ER and Dr. Krishnaswamy attached various exhibits to their response.[1]

The trial court granted appellees' partial-summary-judgment motion on Sealy ER's and Dr. Krishnaswamy's counterclaims and thirty-party claims for breach of contract, fraud, fraudulent inducement, and negligence. Appellees then moved for severance of the partial summary judgment on Sealy ER's and Dr. Krishnaswamy's

---

[1]     We note that the parties filed additional replies and responses.

7

counterclaims and third-party claims, and Sealy ER and Dr. Krishnaswamy moved the trial court to reconsider its partial-summary-judgment ruling.

The trial court granted appellees' motion for severance, and severed Sealy ER's and Dr. Krishnaswamy's counterclaims and third-party claims against appellees for breach of contract, fraud, fraudulent inducement, and negligence, making its ruling a final judgment for purposes of this appeal.[2]

## Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movants, and we indulge every reasonable inference and resolve any doubts in the non-movants' favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

---

[2]     *See Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 820–22, 826 (Tex. 2024).

To prevail on a matter-of-law summary-judgment motion, the movants must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When the defendants move for a matter-of-law summary judgment, they must either: (1) disprove at least one essential element of the plaintiffs' cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiffs' cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movants meets their burden, the burden shifts to the non-movants to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Summary Judgment

### A. Breach of contract

In their first issue, Sealy ER and Dr. Krishnaswamy argue that the trial court erred in granting summary judgment on their breach-of-contract counterclaim

against FERMA because they had "raised a material question of fact on contractual duties" and damages.

A breach-of-contract claim requires proof of four elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiffs; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiffs as a result of the defendant's breach. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

When, as here, the parties' dispute is rooted in a disagreement about the meaning of their contract, this Court's "primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). We read the text "without rendering any portion meaningless, and not in the abstract but in the context in which the words appear and were written—the realities they were meant to address." *Bd. of Regents of Univ. of Tex. Sys. v. IDEXX Lab'ys, Inc.*, 691 S.W.3d 438, 445 (Tex. 2024).

Courts must enforce a contract as written. *See BlueStone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021); *see also In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017). We cannot rewrite the contract or add to its language under the guise of interpretation. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016); *see also In re Davenport*, 522 S.W.3d at 457; *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("A contract's plain language controls, not what

one side or the other alleges they intended to say but did not." (internal quotations omitted)). We "presume parties intend what the words of their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *URI, Inc.*, 543 S.W.3d at 764 (internal quotations and footnotes omitted).

When contract language can be given a certain or definite legal meaning or interpretation, courts determine that meaning as a matter of law. *See Perthuis v. Baylor Miraca Genetics Lab'ys, LLC*, 645 S.W.3d 228, 235 (Tex. 2022). Contract terms are not ambiguous simply because they are unclear or the parties disagree about how to interpret them. *IDEXX Lab'ys*, 691 S.W.3d at 443. Only if ambiguity remains "after applying the pertinent rules of construction" can there be a fact question about intent. *Id.* (internal quotations omitted).

In its partial-summary-judgment motion, FERMA argued that Sealy ER's and Dr. Krishnaswamy's breach-of-contract counterclaim failed as a matter of law because "none of the allegedly-breached obligations actually exist in the [a]mended [m]anagement [a]greement." But according to Sealy ER and Dr. Krishnaswamy, they produced evidence raising a fact issue that FERMA failed to comply with various provisions of the amended management agreement and the policies and procedure manual, and they identified several requirements set forth in the amended management agreement's management services provision as the basis for their

breach-of-contract counterclaim. We address each of the provisions relied on by Sealy ER and Dr. Krishnaswamy in turn.

### 1. Laboratory compliance

Sealy ER and Dr. Krishnaswamy assert that FERMA breached the management services provision's laboratory compliance requirement by "missing API tests and failing QC's,"[3] which were "deficiencies" that "risked closure of the laboratory." The amended management agreement's section 2.3, the provision invoked by Sealy ER and Dr. Krishnaswamy, requires FERMA to:

> comply with all [p]olicies as may be amended from time to time, provided that [Sealy ER] shall first notify [FERMA] of such amendments in writing. [FERMA] also shall comply with all applicable local, state, and other governmental authorities and shall cause its employees and representatives to comply with the same.

Sealy ER and Dr. Krishnaswamy point to the language that required FERMA to "comply with all applicable local, state, and other governmental authorities," but they do not identify any statute or regulation that was violated by any testing deficiencies or show any damages that resulted from testing deficiencies, and they acknowledge that any testing deficiencies that occurred under FERMA's

---

[3] Sealy ER and Dr. Krishnaswamy concede that the terms "API test" and "QC" are nowhere defined in the record, but the context in which they are used indicates that at least API testing is somehow related to state regulation. They note that the parties appear to have used the acronyms "without confusion," but the parties' apparent understanding does not assist the Court in determining whether Sealy ER and Dr. Krishnaswamy raised an issue of material fact which would avoid summary judgment on their breach-of-contract counterclaim.

management fell short of requiring the laboratory's closure. As such, Sealy ER's and Dr. Krishnaswamy's vague allusions to testing deficiencies and general governmental compliance requirements do not raise a genuine issue of material fact as to whether FERMA's conduct constitutes a breach of the laboratory compliance provision of the amended management agreement that would entitle them to damages.

## 2. Insurance coverage

Sealy ER and Dr. Krishnaswamy assert that FERMA's failure to "provide a copy" of its worker's compensation insurance "policy to [Sealy ER]" raises a fact issue as to whether FERMA breached the amended management agreement's section 2.7, which provides:

> [FERMA] will obtain, provide and maintain customary worker's compensation insurance coverage for [FERMA-] employed personnel and comprehensive general liability insurance. [FERMA] shall give [Sealy ER] notice of any material changes in the status of its coverage. [FERMA] will secure and maintain [Sealy ER] as an additional insured on all of its insurance policies.

According to Sealy ER and Dr. Krishnaswamy, the requirement that FERMA "give [Sealy ER] notice of any material changes in the status of its coverage" "would be illusory if [Sealy ER] never knew what coverage had been obtained or maintained when the insurance policy was not provided to [Sealy ER] in the first place." But the requirement to "obtain, provide and maintain" insurance *coverage* does not include a requirement that FERMA provide Sealy ER with a copy of any insurance

13

*policy*, and being given a copy of an insurance policy is not the only way that FERMA could have notified Sealy ER about changes in coverage. That Sealy ER would have preferred to receive a copy of FERMA's insurance policies is not a reason to read an entirely new obligation into an unambiguous contract term. *See IDEXX Lab'ys*, 691 S.W.3d at 443. Thus, Sealy ER and Dr. Krishnaswamy have not raised a fact issue on their counterclaim that FERMA breached the amended management agreement's insurance coverage provision.

### 3. Physician education

Sealy ER and Dr. Krishnaswamy assert that FERMA breached the amended management agreement's section 2.1(a) by failing to "train and educate" physicians employed by Sealy ER. Section 2.1(a) of the amended management agreement provides that "[FERMA] shall communicate and coordinate with [Sealy ER] and [Sealy ER's] clinical personnel concerning the emergency medical services provided at the [emergency room]."

In its partial-summary-judgment motion, FERMA argued that it did not breach the cited provision because section 2.1(a) did not require FERMA to provide any particular "education" or "orientation." But according to Sealy ER and Dr. Krishnaswamy, the "gravamen of [their breach-of-contract counterclaim] [wa]s that FERMA was failing to do the training it was obligated to coordinate."

14

Sealy ER and Dr. Krishnaswamy argue that FERMA was not entitled to summary judgment on this issue because FERMA did not explain "why its duty to 'communicate and coordinate' with personnel concerning the [emergency services] being provided d[id] not include educating or orienting those personnel." But "communicate" and "coordinate" does not mean the same thing as "educate" and "orient," nor are the terms "communicate" and "coordinate" reasonably understood to encompass education and orientation. We "presume parties intend what the words of their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *URI, Inc.*, 543 S.W.3d at 764 (internal quotations and footnotes omitted); *see also Fischer*, 479 S.W.3d at 237 (terms of contract must be sufficiently definite to confirm that parties intended to be bound, to enable court to understand parties' obligations, and to provide appropriate remedy if terms are breached). Thus, Sealy ER and Dr. Krishnaswamy failed to raise a fact issue about whether FERMA failed to comply with the amended management agreement's section 2.1(a).

### 4. Policy updates

Sealy ER and Dr. Krishnaswamy also argue that FERMA failed to comply with the amended management agreement's section 2.1(b), which required FERMA to "recommend, implement and update [Sealy ER's] policies and procedures that meet the applicable standard of care for the [emergency room]," because "after

15

repeated requests," FERMA did not provide "a single update." FERMA, in its partial-summary-judgment motion, explained though that the amended management agreement did not require "FERMA to provide updates, so long as Sealy [ER]'s existing policies and procedures met the applicable standard of care." According to Sealy ER and Dr. Krishnaswamy, summary judgment was not proper on this alleged breach of the amended management agreement because it required an "assumption that the standard of care was already met." But FERMA was not required to prove a negative. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 397 (Tex. 2008) (noting in determining burden allocation of fact party must prove, courts consider: (1) comparative likelihood certain situation may occur in reasonable percentage of cases and (2) difficulty in proving a negative). Because there was no definite periodic update required or date certain on which FERMA was required to update the policies and procedures, it was incumbent on Sealy ER and Dr. Krishnaswamy, as the plaintiffs asserting breach, to raise a fact issue showing that a change to the standard of care had occurred. *Cf. Envt'l Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015) (rejecting argument defendant should bear burden of proving authorization, or consent, as affirmative defense to trespass, where "unauthorized entry" was essential element of trespass cause of action). Instead, the only evidence was that Sealy ER had "repeated[ly] request[ed]" updates. Because the plain language of the amended management agreement does not require FERMA

16

to update the policies and procedures at Sealy ER's request, Sealy ER and Dr. Krishnaswamy failed to raise a fact issue as to this alleged breach.

### 5. Billing

Sealy ER and Dr. Krishnaswamy assert that they raised a fact issue as to their claim that FERMA breached the amended management agreement's section 2.1(c) by terminating the employment of its billing liaison and failing to rehire for that position. Amended management agreement section 2.1(c) required FERMA to "use commercially reasonable best efforts to timely bill and collect all facility and other applicable fees for all reimbursable emergency health care services provided at the [emergency room]." In its partial-summary-judgment motion, FERMA asserted that "[n]othing in [the amended management agreement's section 2.1(c)] required FERMA to actually employ a billing liaison, and nothing in the agreement obligated FERMA to 'enhance cash flow.'"

In the trial court, Sealy ER and Dr. Krishnaswamy invoked the amended management agreement's section 2.6(c), which provides that FERMA "is responsible for the salaries of [its] management team," including a "[b]illing [l]iaison," and they asserted that "'commercially reasonable best efforts to timely bill' would logically require hiring a person to actually make those efforts." But Sealy ER and Dr. Krishnaswamy did not identify any provision that required FERMA to employ a billing liaison. Their argument suffered from the same logical

fallacy as the argument that they made about the insurance coverage provision—i.e., employing a billing liaison was not the only way for FERMA to provide billing and fee collection services.

Further, to the extent that Sealy ER's and Dr. Krishnaswamy's breach-of-contract counterclaim relies on FERMA's obligation to use its "commercially reasonable best efforts to timely bill and collect" fees, we note that while best-efforts clauses may be enforceable, the contract nevertheless must set some kind of goal or guideline against which best efforts may be measured. *See Spain ex. rel. Linda & Barry Spain Tr. v. Phoenix Elec., Inc.*, No. 01-22-00656-CV, 2024 WL 971661, at *8 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, no pet.) (mem. op.); *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 581 (Tex. App.—Dallas 1991, writ denied).

In *Spain*, this Court considered the enforceability of a contract provision that required the purchaser of a company that performed electrical work for commercial and multifamily residential construction projects to "use its best efforts in the operation of the [c]ompany's business" "in a manner that maximize[d] the [e]arn-[o]ut [p]ayments to the [seller], provided that [p]urchaser [would] not be required to enter into any agreement that d[id] not meet its historical profitability requirements." 2024 WL 971661, at *2 (internal quotations omitted). A few years after the parties entered the contract, the seller sued the purchaser for breach of

18

contract, alleging that contrary to growing the company's business following the sale, the purchaser did not maintain proper staffing levels at the company, and the company submitted far fewer bids on projects. *Id.* The purchaser then moved for summary judgment, and the trial court granted the motion. *Id.* at *3. The seller appealed, asserting that Texas law did not require a best-efforts provision to contain a specific goal or guideline to be enforceable. *Id.* This Court disagreed, concluding that the best-efforts provision was too indefinite to be enforced. *Id.* at *9–10.

Like the best-efforts provision in *Spain*, the amended management agreement, even when read together with the policies and procedures manual, does not set out any kind of goal or guideline against which FERMA's best efforts can be measured. Consistent with *Spain*, we conclude that the amended management agreement's best-efforts provision is too indefinite to be enforceable and thus cannot be read to require FERMA to have hired a new billing liaison.

### 6. Staff training

Sealy ER and Dr. Krishnaswamy next assert that they raised a fact issue as to whether FERMA breached the amended management agreement's section 2.1(d) by failing to train and educate Sealy ER staff. Section 2.1(d) states that "[FERMA] shall coordinate training and continuing education for all staff providing [s]ervices at [Sealy ER's] expense." Sealy ER and Dr. Krishnaswamy also point to provisions in the policies and procedures manual that:

19

- require all "clinical personnel who provide direct patient care" to be "CPR certified on a biennial basis" and note that "[c]ompliance with this policy can be achieved by attending and successfully passing the American Heart Association ACLS/BCLS/PALS course or other equally qualified training every two years";

- require "[a]ll employees with occupational exposure . . . to participate in a training program . . . [p]rior to initial assignment of tasks where exposure takes place" and "annually thereafter";

- designate the "Director of Nursing and/or his/her designee" as being responsible for Sealy ER's employee-training program and requires "each new employee" to "attend an OSHA compliant training orientation"; and

- require pharmacy personnel to "receive documented on-the-job training" as to "pharmacy operations."

In its partial-summary-judgment motion, FERMA maintained that the plain language of section 2.1(d) did not obligate it to "train and educate" Sealy ER's staff, only to "coordinate" any training and education. And as for Sealy ER's policies and procedures manual, FERMA asserted that Sealy ER did not provide any evidence as to any obligations created by the manual that FERMA had breached.

The trial court was correct in concluding, consistent with the plain language of the amended management agreement's section 2.1(d), that FERMA did not breach the requirement that it "coordinate" training and continuing education by failing to train and educate Sealy ER's staff. "Courts may not rewrite the parties' contract, nor should courts add to its language." *In re Davenport*, 522 S.W.3d at 457; *see also Fischer*, 479 S.W.3d at 239. "We cannot make new contracts between the parties

20

and must enforce the contract as written." *In re Davenport*, 522 S.W.3d at 457; *see also BlueStone Nat. Res. II*, 620 S.W.3d at 387. The plain language of section 2.1(d) did not require FERMA to "train and educate" Sealy ER's staff.

The policies and procedures manual provisions cited by Sealy ER and Dr. Krishnaswamy go no further in imposing an obligation on FERMA to educate and train Sealy ER's staff. For the most part, they require the employees themselves to obtain specific training. Further, the provision that identifies "the Director of Nursing," a member of FERMA's management team, "and/or his/her designee," as the party responsible for Sealy ER's employee-training program does not require that the party do more than "coordinate" staff training and education.

Thus, we conclude that Sealy ER and Dr. Krishnaswamy failed to raise a fact issue to support its breach-of-contract counterclaim on this issue.

### 7. Marketing services

Sealy ER and Dr. Krishnaswamy assert that FERMA breached the amended management agreement by failing to replace its marketing director, who left in early 2018. According to Sealy ER and Dr. Krishnaswamy, FERMA's obligation to do so is based on the amended management agreement's section 2.2(c), which requires FERMA to "participate in [Sealy ER's] Quality Improvement and Utilization Review programs designed to ensure regulatory compliance and enhance the quality of patient care." Sealy ER and Dr. Krishnaswamy read this provision in conjunction

with the policies and procedures manual provision stating that one of the objectives of "high quality health care" was to "[d]evelop a marketing plan."

But, as FERMA correctly noted in its partial-summary-judgment motion, the amended management agreement's section 2.2(c) does not require FERMA to perform any marketing services; it applies solely to regulatory compliance and patient care. Further, the aspirational statement in the policies and procedures manual that the development of a marketing plan was an objective of "high quality health care," is not definite enough to create a binding contractual obligation. *See, e.g.*, *N.Y. Life Ins. Co. v. Miller*, 114 S.W.3d 114, 123 (Tex. App.—Austin 2003, no pet.) (vague assertion plaintiff's business would be "protected" to some unspecified degree was "far too indefinite" to create binding contractual obligation); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) (if essential terms are not definite, certain, and clear, contract is unenforceable). Thus, the trial court did not err in concluding that Sealy ER and Dr. Krishnaswamy failed to raise a fact issue as to whether FERMA failed to comply with the amended management agreement's section 2.2(c).

### 8.    HIPAA

Sealy ER and Dr. Krishnaswamy assert that one of the third-party doctors negligently misplaced a HIPAA acknowledgement form signed by a Sealy ER employee which, according to Sealy ER and Dr. Krishnaswamy, constituted a breach

22

by FERMA of the amended management agreement's section 7.3. Under section 7.3, FERMA agreed to execute a HIPAA business associate agreement which required it "to use appropriate safeguards to prevent use or disclosure of the [HIPAA-protected] information other than as provided for by th[e] [a]greement." Sealy ER and Dr. Krishnaswamy, though, admitted that they suffered no injury or damages as a result of the alleged misplacement of the HIPAA acknowledgment form. Such admission precluded Sealy ER and Dr. Krishnaswamy from raising a fact issue on an essential element of their breach-of-contract counterclaim based on this provision. *See B & W Supply, Inc.*, 305 S.W.3d at 16.

Based on the foregoing, we hold that the trial court did not err in granting summary judgment in favor of FERMA on Sealy ER's and Dr. Krishnaswamy's breach-of-contract counterclaim.

We overrule Sealy ER's and Dr. Krishnaswamy's first issue.

**B.     Fraud and fraudulent inducement**

In their second issue, Sealy ER and Dr. Krishnaswamy argue that the trial court erred in granting summary judgment against appellees on Sealy ER's and Dr. Krishnaswamy's fraud and fraudulent-inducement counterclaims and third-party claims because they "raised a material question of fact on misrepresentations."

To prevail on a claim for fraud, the plaintiffs must prove that: (1) the defendants made a material misrepresentation; (2) the defendants knew the

23

representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendants made the representation with the intent that the plaintiffs would act on that representation or intended to induce the plaintiffs' reliance on the representation; and (4) the plaintiffs suffered harm by actively and justifiably relying on that representation. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338, 347 (Tex. App.—Houston [1st Dist. 2019, no pet.). Fraudulent inducement is a type of fraud relating specifically to a contract and requires the claimant to establish the elements of fraud "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Fraudulent inducement thus shares the same basic elements with a common-law fraud claim, but it also requires the existence of a contract as an essential element of proof. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018); *W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 484 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

In their partial summary-judgment motion, appellees argued that the fraud and fraudulent-inducement counterclaims and third-party claims of Sealy ER and Dr. Krishnaswamy failed as a matter of law because Sealy ER and Dr. Krishnaswamy did not identify any false representations made by appellees or damages that raised a fact issue. Appellees pointed out that Dr. Krishnaswamy had admitted at his

deposition that he could not recall any false representations and that he did not speak to two of the third-party doctors before executing the original management contract or the amended management contract. In the affidavits of Dr. Krishnaswamy and Jothi Kannappan, Sealy ER's administrative manager of operations, which accompanied Sealy ER's and Dr. Krishnaswamy's response, though, Dr. Krishnaswamy and Kannappan attested that "[they] were told that FERMA had substantial experience managing [emergency room] facilities and that [FERMA was] expanding [its] operation to manage multiple facilities across the state" and "FERMA was about to enter into a relationship with a Corpus Christi hospital to manage their [emergency room]."

Sealy ER and Dr. Krishnaswamy argue that they raised a fact issue on their fraudulent-inducement counterclaims and third-party claims because this case involves the amended management agreement, not the original management agreement, and Sealy ER and Dr. Krishnaswamy spoke with appellees before executing the amended management agreement. But Sealy ER and Dr. Krishnaswamy do not base their fraudulent-inducement counterclaims and third-party claims on any new obligation created under the amended management agreement. *See Kajima Int'l, Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 293 (Tex. 2000) (party's asking another party for continued performance only triggers submission of jury question on fraud when party makes knowingly

25

fraudulent misrepresentation to induce that performance); *see also Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (some evidence that employer committed fraud in making oral agreement to pay bonus to employee to induce him to continue working under written contract).[4]

As for Sealy ER's and Dr. Krishnaswamy's allegations of post-contract fraud, the gist of the representations allegedly made by FERMA involves FERMA's competence and willingness to perform the duties required under the amended management agreement. "[A]n unfulfilled promise does not, standing alone, constitute fraud; otherwise, every breach of contract would amount to fraud." *Kajima Int'l*, 15 S.W.3d at 293.

For these reasons, we conclude that Sealy ER and Dr. Krishnaswamy have not identified any misrepresentation of fact by appellees which induced them to agree to

---

[4]    The undisputed evidence shows that Sealy ER and Dr. Krishnaswamy, and not FERMA, initiated negotiations for the amended management agreement to change the price that Sealy ER paid for the services to be performed by FERMA under terms more favorable to Sealy ER. For the first time in their appellants' brief, Sealy ER and Dr. Krishnaswamy assert that appellees also committed fraud by making false representations about the services they provided on their website, which did not exist when the parties entered into the amended management agreement. This is not a basis for reversal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (summary judgment non-movant could not raise for first time on appeal additional fact issue that was not raised in its response); *Texas A&M Concrete, LLC v. Brae Burn Constr.*, 651 S.W.3d 607, 618 (Tex. App.— Houston [1st Dist.] 2022, no pet.); *Daniels v. Bertolino*, No. 03-14-00671-CV, 2015 WL 4909929, at *2 (Tex. App.—Austin Aug. 12, 2015, no pet.) (mem. op.) ("A party may not raise new reasons why a summary judgment should have been denied for the first time on appeal.").

a new provision in the amended management agreement or to continue performing under the amended management agreement. Thus, we hold that the trial court did not err in concluding that FERMA was entitled to judgment as a matter of law on Sealy ER's and Dr. Krishnaswamy's counterclaims and third-party claims for fraud and fraudulent inducement.

We overrule Sealy ER's and Dr. Krishnaswamy's second issue.

## C. Negligence

In their third issue, Sealy ER and Dr. Krishnaswamy argue that the trial court erred in granting summary judgment in favor of appellees on their negligence counterclaims and third-party claims because Sealy ER and Dr. Krishnaswamy raised a fact issue as to whether FERMA breached regulatory duties in addition to its contractual duties.

In their partial-summary-judgment motion, appellees argued that Sealy ER's and Dr. Krishnaswamy's negligence counterclaims and third-party claims failed as a matter of law because the claims were barred by the economic loss rule. The economic loss rule is a collection of rules that govern the recovery of economic losses in certain areas of the law. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011); *W. Loop Hosp.*, 649 S.W.3d at 485. Generally, the economic loss rule precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the

27

economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *W. Loop Hosp.*, 649 S.W.3d at 485.

Whether the economic loss rule bars a tort claim is a question of law. *Eagle Oil & Gas v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd). In determining whether the rule applies, we consider the source of the defendants' alleged duty and the damages sought by the plaintiffs. *Id.*; *Levco Constr., Inc. v. Whole Foods Mkt. Rocky Mountain/Sw. L.P.*, 549 S.W.3d 618, 635 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "[T]he nature of the injury helps determine which duty or duties are breached and, ultimately, which damages are appropriate." *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008); *see also Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (stating focus of economic loss rule is "on determining whether the injury is to the subject of the contract itself"); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). A party's acts may breach duties in tort, duties in contract, or duties in both simultaneously. *Jim Walter Homes*, 711 S.W.2d at 618; *W. Loop Hosp.*, 649 S.W.3d at 485. A claim sounds in contract when the only injury is economic loss to the subject of the contract itself. *½ Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011); *W. Loop Hosp.*, 649 S.W.3d at 485. Even if the issue in dispute is the subject of a contract, though, a party states

a tort claim when the duty allegedly breached is independent of the contract and the harm that is suffered is not solely the economic loss of a contractual benefit. *Chapman Custom Homes*, 445 S.W.3d at 718; *Eagle Oil & Gas*, 549 S.W.3d at 268. The Texas Supreme Court has explained:

> Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others. If the defendant[s'] conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff[s'] claim may also sound in tort. Conversely, if the defendant[s'] conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff[s'] claim ordinarily sounds only in contract.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotations and citations omitted). We look to the substance of the cause of action, not the manner in which it was pleaded, to determine the type of action that is brought. *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 62 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Sealy ER and Dr. Krishnaswamy argue that the "economic loss rule has no application to [their] negligence" counterclaims and third-party claims because their claims were not based on any contractual duty, but rather on the general duty of FERMA not to harm [Sealy ER's and Dr. Krishnaswamy]'s emergency business." According to Sealy ER and Dr. Krishnaswamy, FERMA's negligence breached not only contractual duties but also regulatory duties, and it produced evidence of

remediation costs necessary to protect the emergency room from being shut down. Specifically, Sealy ER and Dr. Krishnaswamy assert that FERMA breached its independent duty of care by failing to operate the laboratory in compliance with applicable regulations. As noted above, though, Sealy ER and Dr. Krishnaswamy have not identified any harm which resulted from any regulatory lapses that allegedly occurred while FERMA was managing the emergency room.

Sealy ER and Dr. Krishnaswamy also assert that the economic loss doctrine does not apply because they are seeking reliance damages, not "contractual expectancy" damages. But reliance damages are also a measure of contract damages. *See AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 808 (Tex. App.— Houston [1st Dist.] 2019, no pet.). Likewise, the cost of mitigating harm flowing from a breach of contract, such as the remediation costs sought by Sealy ER and Dr. Krishnaswamy, is factored into recovery under a breach-of-contract theory. *See Wyde v. Francesconi*, 566 S.W.3d 890, 895 (Tex. App.—Dallas 2018, no pet.) ("Contract law broadly supports the idea that a plaintiff should minimize damages by taking affirmative steps, when applicable, to stop the accumulation of losses."); *see also Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999). No evidence shows that the damages allegedly caused by the breach of any independent duty in negligence are anything more than the economic loss allegedly caused by the

breach of contract. *See ½ Price Checks Cashed*, 344 S.W.3d at 387; *W. Loop Hosp.*, 649 S.W.3d at 485.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of appellees on Sealy ER's and Dr. Krishnaswamy's negligence counterclaims and third-party claims.

We overrule Sealy ER's and Dr. Krishnaswamy's third issue.

**Conclusion**

We affirm the order of the trial court. All pending motions are dismissed as moot.

Julie Countiss
Justice

Panel consists of Justices Goodman, Landau, and Countiss.