

## NUMBER 13-25-00460-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

## IN RE JUAN J. CRUZ

---

## ON PETITION FOR WRIT OF MANDAMUS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Cron**

By petition for writ of mandamus, relator Juan J. Cruz asserts that the trial court[1] abused its discretion by granting a new trial in favor of real party in interest Guillermo Avellaneda in a personal injury lawsuit arising from a motor vehicle collision. We conditionally grant the petition for writ of mandamus.

---

[1] This original proceeding arises from trial court cause number CL-20-1280-D in the County Court at Law No. 4 of Hidalgo County, Texas, and the respondent is the Honorable Federico Garza Jr. *See* TEX. R. APP. P. 52.2.

# I.    BACKGROUND

Avellaneda filed suit against Cruz on grounds that he sustained "severe personal injuries" when their vehicles collided on September 20, 2019, in Edinburg, Texas. Avellaneda alleged that he was traveling eastbound on West Trenton Road in the inside lane but had come to a complete stop due to traffic when Cruz, "driving at a high rate of speed," struck Avellaneda's vehicle from behind. Avellaneda asserted causes of action against Cruz for negligence, negligence per se, and gross negligence. The parties' dispute was ultimately submitted to a jury, which heard testimony from four witnesses: Avellaneda, Cruz, and two of Avellaneda's treating medical providers—Benjamin N. Barnett, D.C., a chiropractor, and Yixiang Liu, M.D., a physician specializing in pain management and anesthesiology.

Dr. Barnett testified that Avellaneda presented for an evaluation and treatment on September 24, 2019, complaining of lower back pain, mid-back pain, stiffness, weakness, tenderness, trigger points, contractions, and muscle spasms. Avellaneda also complained of chest pain consistent with an injury resulting from a seat belt. Dr. Barnett testified that Avellaneda's injuries were consistent with those experienced by individuals involved in vehicular collisions. Dr. Barnett diagnosed Avellaneda with ligament sprains of the thoracic and lumbar spine and ordered him to undergo conservative physical therapy several times each week. Dr. Barnett advised Avellaneda to make certain accommodations regarding his injuries and recommended that he continue to engage in physical activity. He specifically testified that Avellaneda could continue his workout regimen at the gym with certain modifications. When Avellaneda did not show enough

improvement with the prescribed treatment plan, Dr. Barnett ordered an MRI, which showed that Avellaneda had an L4-L5 posterior disc protrusion and an L5-S1 disc protrusion. Dr. Barnett thus referred Avellaneda to Dr. Liu. Dr. Barnett testified that he last saw Avellaneda on January 7, 2020.

Dr. Liu testified at trial that she first saw Avellaneda on November 14, 2019. She thereafter administered lumbar epidural steroid injections to decrease Avellaneda's inflammation and improve his daily activities. According to Dr. Liu, this treatment reduced Avellaneda's pain levels from a "nine" to a "seven"; however, Avellaneda continued to complain of pain. Dr. Liu recommended that Avellaneda undergo another lumbar epidural shot, provided a prescription for ibuprofen, and referred Avellaneda to Dr. Schroeder, an orthopedic surgeon. Dr. Liu testified that she last saw Avellaneda on January 15, 2020.

Avellaneda testified that he had just left work at the time of the accident and was following his boss to an appointment. The weather was clear and dry; however, traffic was congested, and he characterized the conditions as "stop and go." Avellaneda explained that his vehicle was "[c]ompletely stopped" for approximately five seconds prior to the collision. Avellaneda testified that he was "in shock," and the collision was a "jarring experience." He said that Cruz "apologized profusely for running into [him] because he was on his phone," and that Cruz told him that he "wasn't paying attention." Avellaneda reiterated that Cruz claimed fault for the accident at the scene of the collision. They called the police, who arrived within five to ten minutes after the accident occurred.

Avellaneda testified that, immediately after the accident he was in shock and declined medical care. Later that day, however, he began feeling pain in his upper and

3

lower back, chest, and head and noted bruising on his chest. He denied that he had any such pain prior to the collision. He asked his boss for advice, and his boss directed him to contact an attorney, which he did, and he went to McAllen Family Urgent Care for treatment. McAllen Family Urgent Care referred Avellaneda to Dr. Barnett. Avellaneda testified that physical therapy helped as a "temporary" fix. The injection administered by Dr. Liu also helped briefly, but his pain increased to an "eight" out of "ten" within two to three days after he received the injection. Although Dr. Liu recommended a second injection, Avellaneda explained that he did not proceed with it because he "didn't have the financial means" and had "bills stacking up." At trial, Avellaneda testified that he was still experiencing pain because of the crash.

Avellaneda testified that Dr. Barnett told him to try to stay active after the collision. He explained that he continued working out after the crash but changed his routine by "not lifting as heavy as [he] used to" and instead using light weights and performing stretches and light core exercises. Avellaneda told the jury that he used to play basketball competitively, but now he "just shoot[s the ball] around." Avellaneda stated that he "still love[s] playing basketball," and he "want[s] to stay active so this pain doesn't define the rest of my life and just take me downhill." He must "deal with" the pain and "keep going" because he has two daughters, with another child on the way, and he has "to stay strong, as strong as possible." Avellaneda further testified that the collision affected his abilities concerning his children such as picking them up or installing and removing their car seats. He also explained that they were "in the middle of a move and [he] can't move anything heavy," so he had to hire movers. In summary, Avellaneda testified that his daily activities

4

have been limited because of the accident. Avellaneda further told the jury that the collision affected his mental health because he experiences "pain every day."

In terms of damages, Avellaneda told the jury that he wants to obtain more medical treatment because his injuries have not improved since the crash and have instead become progressively more painful. Avellaneda also testified that his vehicle, a 2006 Mercedes, was totaled because of the accident, and his property damages comprised $3,021.20. Avellaneda asserted that he was not seeking compensation for any lost income or loss of earning capacity.

Upon cross-examination, Avellaneda conceded that he went to the gym continuously, without stopping, both before and after the accident, as well as during his medical treatment. In this regard, the jury saw Avellaneda's Facebook posts indicating his gym attendance following the accident. Avellaneda's medical records did not reflect that Avellaneda worked out routinely at a gym. And while he testified that he suffered bruising at trial, his medical records indicated that he initially denied bruising because of the accident.

At trial, Cruz told the jury that he was "wholly and solely responsible for this crash." He stated that traffic was in "gridlock" at the time of the collision, and the two vehicles at issue were located approximately eight to ten cars back from a traffic light which had gone through several cycles while they were waiting to proceed through the intersection. Cruz testified that he was "standing still" or "inching away." Cruz explained that he had his foot on his brake and did not feel his vehicle move, and he speculated that he "probably let off a little bit without realizing." Cruz clarified that his vehicle had come to a complete stop,

then he apparently lifted his foot off the brake. He characterized the collision as a "tap." He acknowledged that his discovery responses indicated that he did not have time to apply his brakes before the collision; however, he did not agree that the accident was caused because he failed to control his speed. Cruz told the jury that the air bags on his vehicle, a Chevy Tahoe, did not deploy because of the collision, he did not need a wrecker to move his vehicle, and he did not seek medical care.

Cruz testified that he sells solar panels, and that at the time of the collision, he was going to a 5:30 p.m. appointment. Cruz denied he was in a hurry and stated that he did not "drive like that." Immediately before the vehicles collided, Cruz stated that he was checking his gas gauge because he was approaching a gas station, his "gas was a little low," and he was worried that he might not make it to his appointment.

Cruz testified that Avellaneda misunderstood his statements following the crash. Cruz testified that he was not on his phone at the time of the collision, and instead he checked his phone after the accident so that he could note the time of the accident and determine if he should call his boss about the meeting. Cruz acknowledged that he was apologetic to Avellaneda about the accident. He further acknowledged he was taking responsibility for the accident and Avellaneda's injuries but clarified that he had no proof that he caused Avellaneda's injuries.

At trial, Avellaneda offered into evidence his medical records and the Texas Peace Officer's Crash Report (report) regarding the incident. The report stated that Avellaneda's vehicle was stationary at a red light when Cruz failed to control his speed and struck it from the rear. The report indicated that Avellaneda had sustained a possible injury and

6

that Cruz was not injured. The report provided that in the investigating officer's opinion, the crash did not result in at least $1,000 damage to any property.

In response to the first question in the jury charge, the jury found that the negligence of Cruz did not "proximately cause the occurrence in question." In accordance with the instructions in the charge, the jury did not answer the remaining questions. Thereafter, Avellaneda filed an amended motion for new trial and an amended motion for judgment notwithstanding the verdict. In his amended motion for new trial, Avellaneda argued that the jury's answer to the first question in the charge was against the great weight and preponderance of the evidence and was manifestly unjust. In his amended motion for judgment notwithstanding the verdict, Avellaneda again asserted that the jury's answer was "against the overwhelming weight of the evidence," and that Cruz failed to present "proof of any defense, justification or excuse, or any evidence that [Avellaneda's] injuries were [caused by] a previous injury." Cruz filed a combined response to Avellaneda's motion for new trial and motion for judgment notwithstanding the verdict asserting, *inter alia*, that there was legally and factually sufficient evidence to support the jury's verdict.

On May 6, 2025, the trial court granted Avellaneda's motion for new trial; however, the new trial order did not include a rationale for its ruling. On June 6, 2025, the trial court vacated that order. On June 10, 2025, the trial court signed a "Second Amended Final Judgment"[2] which rendered judgment in favor of Cruz, ordered Avellaneda to take

---

[2] We note that the record before this Court does not include an original final judgment or a first amended final judgment.

7

nothing on his suit, and ordered Avellaneda to pay Cruz court costs in the amount of $2,715.89.

On June 11, 2025, Avellaneda filed a second amended motion for judgment notwithstanding the verdict and a separate second amended motion for new trial. These second amended motions reiterated and expanded on the claims that he had made in his previous filings. On July 11, 2025, Cruz filed a combined response to these pleadings.

On July 22, 2025, the trial court signed an amended order granting Avellaneda's motion for new trial. This order states in relevant part that:

> The facts and the record clearly show that [Cruz] testified he crashed into [Avellaneda] and took responsibility for causing the crash and took responsibility for [Avellaneda's] injuries. In the very least, the evidence does not support a jury verdict of no negligence that [Cruz] did not proximately cause the occurrence in question. Therefore, no reasonable [] juror or jury could find that there was no negligence on [Cruz's] part because the record shows otherwise.
>
> Because it appeared to the Court that there is no evidence of probative force to sustain the verdict of the jury, and that a directed verdict in favor of [Avellaneda] would have been proper as to question number 1, *a Motion for New Trial* should be rendered in favor of Plaintiff.
>
> IT IS THEREFORE ORDERED by the Court that the motion of [Avellaneda] for *New Trial* is granted, and the verdict of the jury is vacated and set aside, and a new trial be ordered.

Cruz thereafter filed this petition for writ of mandamus. In one issue, Cruz asserts that the trial court clearly abused its discretion in granting Avellaneda's motion for new trial because: (1) the new trial order is facially invalid; and (2) there is no valid merits-based reason for granting the motion for new trial, and (3) the record does not support the trial court's rationale for granting a new trial. Cruz also filed a motion to stay the trial court proceedings pending the resolution of his petition for writ of mandamus. We granted

8

Cruz's motion to stay, and we requested, but did not receive, a response to the petition for writ of mandamus from Avellaneda.[3]

## II.    MANDAMUS

Mandamus relief provides an "extraordinary remedy." *In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam) (quoting *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding)). Mandamus is discretionary in nature and it is governed by equitable principles. *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 663 (Tex. 2023) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and the relator lacks an adequate remedy by appeal. *In re Dall. HERO*, 698 S.W.3d 242, 247 (Tex. 2024) (orig. proceeding); *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding) (per curiam). In this regard, there is no adequate remedy by appeal when the trial court abuses its discretion by granting a new trial. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209–10 (Tex. 2009) (orig. proceeding).

## III.    NEW TRIALS

Trial courts possess "considerable authority to grant new trials" and have the duty "to do so when they observe problems that threaten the integrity of the process and,

---

[3] After the Court requested Avellaneda to file a response to the petition for writ of mandamus, Avellaneda's counsel filed a motion for extension of time to file the response. The Court granted Avellaneda's motion for extension of time; however, Avellaneda failed to file a response and instead, Avellaneda's attorneys filed motions to withdraw on grounds that they were not retained for purposes of appeal or filling a response to the petition for writ of mandamus. The Court granted the attorneys' motions to withdraw and requested Avellaneda to file either a response to the petition for writ of mandamus or a notice of appearance for appellate counsel within a specified period of time. Avellaneda did neither within the requisite period and did not seek any further extensions of time to do so.

therefore, the reliability of [a jury's] verdict." *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 302 (Tex. 2023) (orig. proceeding). However, because "disregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury"—the trial court may only do so "when clearly supported by sound reasons." *Id.*

Those reasons must be specifically set forth in the order. *Id.*; *see In re Davenport*, 522 S.W.3d 452, 456–56 (Tex. 2017) (orig. proceeding). In other words, trial courts are required to provide litigants with "an understandable, reasonably specific explanation" for setting aside a jury verdict and ordering a new trial. *In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding) (quoting *In re Columbia Med. Ctr.*, 290 S.W.3d at 213). Trial courts must do so because:

> [A] vague explanation in setting aside a jury verdict does not enhance respect for the judiciary or the rule of law, detracts from transparency we strive to achieve in our legal system, and does not sufficiently respect the reasonable expectations of parties and the public when a lawsuit is tried to a jury. Parties and the public generally expect that a trial followed by a jury verdict will close the trial process. Those expectations may be overly optimistic, practically speaking, but the parties and public are entitled to an understandable, reasonably specific explanation why their expectations are frustrated by a jury verdict being disregarded or set aside, the trial process being nullified, and the case having to be retried.

*In re Columbia Med. Ctr.*, 290 S.W.3d at 213. Generally, this requirement is satisfied when a trial court's stated reason is "a reason for which a new trial is legally appropriate" and "is specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand." *In re Bent*, 487 S.W.3d at 173 (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding)). The new trial

10

order must show that it was granted "only after careful thought and for valid reasons." *In re Davenport*, 522 S.W.3d at 456 (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d at 688). In this regard, granting a new trial "in the interests of justice and fairness" is not a sufficiently specific reason to grant a new trial, and such a generic rationale renders the new trial order facially invalid. *In re Columbia Med. Ctr.*, 290 S.W.3d at 206, 213; *see In re United Scaffolding, Inc.*, 377 S.W.3d at 689–90. Similarly, "the mere recitation of a legal standard, such as a statement that a finding is against the great weight and preponderance of the evidence, will not suffice." *In re United Scaffolding, Inc.*, 377 S.W.3d at 689.

We may also look past the face of the new trial order to perform a merits-based review of the validity of the trial court's reasons for granting a new trial. *In re Rudolph Auto., LLC*, 674 S.W.3d at 300; *In re Bent*, 487 S.W.3d at 173. We do so because "[t]ransparency without accountability is meaningless." *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 758 (Tex. 2013) (orig. proceeding). The Texas Supreme Court has further explained that "[i]t is simply impermissible for the district court, no matter how strongly it disagrees, to substitute its own judgment for the jury's as a basis for a new trial." *In re Rudolph Auto., LLC*, 674 S.W.3d at 307.

## IV.    ANALYSIS

Cruz asserts that the trial court abused its discretion by granting a new trial because the new trial order is facially invalid and there is no valid merits-based reason supporting the trial court's reasoning. The order stated that the evidence "clearly" showed that Cruz testified that he "crashed into" Avellaneda "and took responsibility for causing

the crash and took responsibility for [Avellaneda's] injuries." The order provided that "no reasonable [] juror or jury could find that there was no negligence on [Cruz's] part because the record shows otherwise," and concluded that a new trial should be granted because "there is no evidence of probative force to sustain the verdict of the jury" and "a directed verdict in favor of [Avellaneda] would have been proper."

Thus, in sum, the trial court concluded that the jury's verdict was supported by no evidence. However, this is not a reason for which a new trial is legally appropriate. When there is no evidence to support the jury's verdict, a judgment notwithstanding the verdict is appropriate, not a new trial. *See In re Bent*, 487 S.W.3d at 179 (stating that "judgment notwithstanding the verdict, not a new trial" is appropriate when a party conclusively establishes their claim and there is no contrary evidence); *In re R.E.S.*, No. 08-24-00350-CV, 2025 WL 2646170, at *6, __ S.W.3d __, at __ (Tex. App.—El Paso Sept. 15, 2025, orig. proceeding) (stating that if the claimants "conclusively established their claim" and the opposing party "presented no evidence," then a new trial would not be appropriate); *see also In re Hernandez*, No. 04-23-00246-CV, 2023 WL 5068573, at *3 (Tex. App.—San Antonio Aug. 9, 2023, orig. proceeding) (mem. op.); *In re Jones*, No. 05-16-00081-CV, 2016 WL 3166080, at *3 (Tex. App.—Dallas June 7, 2016, orig. proceeding) (mem. op.). Accordingly, the new trial order is facially invalid because its stated reason is not one for which a new trial is legally appropriate. *See In re Bent*, 487 S.W.3d at 173; *In re United Scaffolding, Inc.*, 377 S.W.3d at 688–89.

In this regard, we further observe that the trial court's proffered rationale runs counter to Texas law. First, "[a]ccidents happen when something has gone wrong, but not

12

all accidents are evidence of negligence." *Lozada v. Posada*, 718 S.W.3d 262, 267 (Tex. 2025) (per curiam). Second, "[t]he mere occurrence of a rear-end automobile accident is not of itself evidence of negligence." *Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). Third, Cruz's testimony regarding his fault constituted some evidence of negligence, but it did not establish negligence as a matter of law. *See Roberts v. Staples*, 644 S.W.3d 738, 744 (Tex. App.—Texarkana 2022, no pet.) (collecting cases regarding testimonial quasi-admissions). And fourth, "[t]he jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony," and "[t]hey may choose to believe one witness and disbelieve another." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The jury heard conflicting testimony about Cruz's use of his phone at the time of the collision, his comments at the scene of the collision, and the force of the impact between the cars. Further, the jury heard testimony regarding Avellaneda's alleged injuries which may have caused it to view his claims with a degree of skepticism. Specifically, Avellaneda sought medical care only after consulting with his boss and counsel. While Avellaneda testified that he suffered extreme pain because of the injuries that he sustained in the collision, he nevertheless continued working out routinely, lifting weights, and playing basketball. Avellaneda did not seek any lost wages because of the accident; thus, the jury may have inferred that he did not miss any time from his job because of the collision. Further, Avellaneda had not sought or received medical care in the five-year interval between January 2020, when he last saw Drs. Barnett and Liu, and the time of trial in February 2025.

13

Based on the foregoing, we sustain the sole issue presented in this original proceeding. We turn our attention to the appropriate remedy. The trial court's rationale for granting a new trial was clear but invalid. In cases such as this, we direct the trial court to enter judgment on the verdict. *See, e.g.*, *In re United Servs. Auto. Ass'n*, 446 S.W.3d 162, 180–81 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re City of Houston*, 418 S.W.3d 388, 397–98 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding); *see also In re VSDH Vaquero Venture, Ltd.*, No. 05–15–01513–CV, 2016 WL 2621073, at *4 (Tex. App.—Dallas May 6, 2016, orig. proceeding [mand. denied]) (mem. op.).

## V.    CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus and the applicable law, is of the opinion that Cruz has met his burden to obtain mandamus relief. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10. We conditionally grant the petition for writ of mandamus, and we direct the trial court to vacate its order of July 22, 2025, and to enter judgment on the jury's verdict. Our writ will issue only if the trial court fails to act in accordance with this memorandum opinion.

JENNY CRON
Justice

Delivered and filed on the
18th day of November, 2025.

14